UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **Raymond Capuano,** : | |
|     **Plaintiff,** : | |
| : | |
| v. : | Case No. 3:03cv1572 (JBA) |
| : | |
| **Island Computer Products, et al.,** : | |
|     **Defendants.** : | |

**RULING ON PLAINTIFF'S MOTION FOR NEW TRIAL OR, IN THE
ALTERNATIVE, TO AMEND JUDGMENT [DOC. # 155]**

On September 15, 2005, the jury returned a verdict for defendant Island Computer Products ("ICP"), finding that plaintiff had not proved his breach of contract claim and that defendant had proved its fraud and negligent misrepresentation counterclaims, but awarding no compensatory damages. See Jury Verdict [Doc. # 149]. Plaintiff now moves for a new trial or, alternatively, to amend the judgment on the basis of: (1) "the jury's express finding that the defendant incurred no harm, which was an essential element of the defendant's counterclaims;" (2) "insufficient evidence to support a finding of misrepresentation and fraud under New York law;" and (3) "a series of improper comments by counsel which unfairly influenced the jury and which the court's limiting instruction did not adequately cure." See Pl. Mot. [Doc. # 155]. For the reasons that follow, plaintiff's motion will be denied.

**I.   Standard**

Fed. R. Civ. P. 59(a) provides that "[a] new trial may be

granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(e) provides that a party may make a motion to alter or amend a judgment.

"[A] motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." Munafo v. Metropolitan Transp. Auth., 381 F.3d 99, 105 (2d Cir. 2004); accord Manley v. Ambase Corp., 337 F.3d 237, 245 (2d Cir. 2003) ("[F]or a district court to order a new trial under Rule 59(a), it must conclude that the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice, i.e., it must view the jury's verdict as against the weight of the evidence."). Likewise, "[a]lthough Rule 59(e) does not prescribe specific grounds for granting a motion to alter or amend an otherwise final judgment, . . . district courts may alter or amend [a] judgment to correct a clear error of law or prevent manifest injustice." Munafo, 381 F.3d at 105.

**II.   Discussion**

    A.   <u>Jury's Finding of No Compensatory Damages</u>

Plaintiff argues that "[p]roof of harm was an essential element of the defendants' counterclaims" and because "[t]he jury

expressly and repeatedly found that the defendant suffered no harm on account of Mr. Capuano's alleged tortious conduct," "the jury's verdict on the counterclaims should . . . have been for Mr. Capuano . . . in accordance with the court's instructions." Pl. Mot. at 2.  Plaintiff contends that the jury's verdict "was plainly inconsistent with the court's instructions on the essential elements of the counterclaims under New York [law,] and the court should amend the judgment accordingly to prevent a clear miscarriage of justice."  Id. at 3.

The Court instructed the jury in its final instructions that in order to find for ICP on its fraud counterclaim, the jury had to find proved that, inter alia, ICP sustained damages caused by its reliance on plaintiff's false representation.  Jury Instructions [Doc. # 148] at 27.  The Court explained that:

> Whether damages were caused as a result of ICP's reliance depends on whether ICP proved that the losses sustained, if any, were the proximate, direct result of its reliance on the representations.  Whether the losses were the proximate result of its reliance means whether the reliance was a substantial factor in bringing about the losses, that is, if it had such an effect in producing the losses that reasonable people would regard it as a cause of the losses.
>
> Whether ICP was damaged depends upon whether it sustained actual pecuniary losses (out-of-pocket losses) as a result of its reliance on Mr. Capuano's representations.  If you find that ICP has not proved that its reliance caused it to sustain any losses, you must find for Mr. Capuano.
>
> If you find that ICP has proved that it sustained losses as a result of its reliance on Mr. Capuano's allegedly fraudulent representations, your verdict will

3

>be for ICP in the amount of the actual pecuniary losses
>it suffered.  ICP is no longer claiming payment of Mr.
>Capuano's salary as such a loss.

Id.  As to ICP's negligent misrepresentation counterclaim, the Court instructed the jury that in order to find for defendant on that claim, it needed to find, inter alia, "that ICP did reasonably rely on [plaintiff's] representation to its detriment." Id. at 28.  The jury returned a verdict finding that ICP had proved both of its counterclaims, but awarding no compensatory damages.  See Jury Verdict ¶¶ 5-6, 8-10.

Defendant claims that plaintiff's motion for a new trial or an amended judgment on this ground is barred because plaintiff did not raise this issue before the jury was discharged.  Def. Opp. [Doc. # 158] at 2 (citing James v. Tilghman, 194 F.R.D. 408 (D. Conn. 1999)).  Defendant also urges that, in any event, the jury's award of no compensatory damages does not undermine the finding of plaintiff's liability on defendant's counterclaims because "the jury indeed could have found actual loss proven, but that defendant [did] not prove[] the specific amount of that loss with a reasonable certainty." Id. at 3 (citing Hi-Ho Tower, Inc. v. Com-Tronics, Inc., 255 Conn. 20, 37 (Conn. 2000)).

First, "[a]s a general rule, if trial counsel fails to object to any asserted inconsistencies [in a jury verdict] and does not move for resubmission of the inconsistent verdict before the jury is discharged, the party's right to seek a new trial is

waived." Manes v. Metro-North Commuter R.R., 801 F. Supp. 954, 959 (D. Conn. 1992) (citing Lockard v. Missouri Pacific R.R. Co., 894 F.2d 299, 304 (8th Cir. 1990)), aff'd, 990 F.2d 622 (2d Cir. 1993); accord James, 194 F.R.D. at 413-14. "The purpose for this rule is to allow the original jury to eliminate any inconsistencies without the need to present the evidence to a new jury." Manes, 801 F. Supp. at 959. "The rule, moreover, prevents a dissatisfied party . . . from misusing procedural rules and obtaining a new trial for an asserted inconsistent verdict." Id. Here, plaintiff's counsel did not identify the claimed inconsistency after the verdict was returned and thus the opportunity to have the jury correct any inconsistency was lost.

Moreover, even if plaintiff's argument were not barred for failure of being raised before the jury was discharged, it fails on the merits. "To justify setting aside an otherwise valid jury verdict, the special verdict answers must be ineluctably inconsistent." Munafo, 381 F.3d at 105. Thus, "[i]n cases where the special verdict answers appear to be inconsistent but there is a view of the case that makes the jury's answers consistent, they must be resolved that way." Id. Here, as described above, in order to find for the defendant on its counterclaims, the jury had to find "that ICP sustained damages caused by its reliance [on plaintiff's fraudulent representation]" (fraud counterclaim) and that "ICP did reasonably rely on [plaintiff's] representation

5

to its detriment" (negligent misrepresentation counterclaim). Jury Instructions at 21, 28. The jury was further instructed that ICP could "only recover as compensatory damages its actual proven losses . . . [proven] with as much definiteness and accuracy as the circumstances permit." Id. at 27, 33, 36.

On the basis of these instructions, the jury could have found that ICP sustained some actual damage and detriment as a result of plaintiff's representations, but could have also concluded – consistent with its first finding – that ICP had not proven those damages with sufficient definiteness and accuracy. See also Hi-Ho Tower, Inc. v. Com-Tronics, Inc., 255 Conn. 20, 37 (Conn. 2000) (upholding jury verdict awarding punitive, but no compensatory, damages, reasoning "[i]n light of the specific jury interrogatories and answers" – which provided that if that jury found that defendant had suffered "some actual loss, even if not calculable," it could award punitive damages on defendant's counterclaim – "we conclude that the jury found that [defendant] had suffered some actual loss, although its specific amount had not been proven"). Accordingly, in view of the Second Circuit's caution that if "there is a view of the case that makes the jury's answers consistent, they must be resolved that way," Munafo, 381 F.3d at 105, the Court views the jury's verdict in the manner described above and concludes that its answers are consistent and no new trial is warranted.

B.  Jury's Finding of Misrepresentation and Fraud

Plaintiff next argues that "there was insufficient evidence in the case to support a finding of fraud and misrepresentation against Mr. Capuano."  Pl. Mot. at 3.  Plaintiff contends that "[t]he finding would have to have been based on the testimony of ICP witnesses that Capuano described his last position at EDS as a 'promotion,' which he denied ever doing.  Even if he did, however, New York law expressly excludes 'puffery' such as this in a job interview as an actionable tort."  Id. at 3-4.  Further, plaintiff claims that if the exact title of plaintiff's previous position was "as critical to ICP as it claimed at trial, it could have easily determined the accuracy of Mr. Capuano's last position and title by means of a background investigation.  The evidence at trial was that ICP's standard procedure was to perform a background investigation of job candidates."  Id. at 4.  Defendant responds that plaintiff's argument "reveals nothing more than a rehashing of his arguments asserted many times during the trial" and that thus plaintiff has failed to sustain his burden of demonstrating that a new trial is warranted.  Def. Opp. at 4.

Plaintiff does not dispute the legal accuracy of the Court's instructions on this issue, but rather contends that the evidence does not support the jury's verdict in light of these

instructions.[1]  However, while plaintiff argues that the jury's

---

[1] The jury was instructed that in order to find for defendant on its fraud counterclaim, it must find proven by clear and convincing evidence: "(1) that Mr. Capuano made a representation of a material fact or partially disclosed information while omitting other information such that the partial disclosure constituted a tacit representation of material fact; (2) that the representation was false; (3) that Mr. Capuano knew the representation was false or made the representation recklessly without regard to whether it was true or false; (4) that Mr. Capuano made the representation to induce ICP to rely on it; (5) that ICP did justifiably rely on it;(6) that ICP sustained damages caused by its reliance."  Jury Instructions at 21.  With respect to ICP's counterclaim of negligent misrepresentation, the jury was charged that it must find proved by a preponderance of the evidence: (1) that Mr. Capuano had a duty, as a result of a special relationship, to give correct information; (2) that Mr. Capuano made a false representation that he should have known was false;(3) that the information Mr. Capuano supplied by the representation was known by Mr. Capuano to be desired by ICP for a serious purpose, such as the guidance of ICP in its business transactions; (4) that ICP intended to rely upon the representation; (5) that ICP did reasonably rely on the representation to its detriment.  Id. at 28.  Further, the jury was instructed with respect to the first element of ICP's negligent misrepresentation counterclaim, the jury needed to "determine whether Mr. Capuano and ICP had a relationship of mutuality of interest such as the relationship between two parties to an executed contract giving rise to a duty to give correct information."  Id. at 29.  To determine whether the parties had such a relationship, the jury had to determine whether ICP had proved: (1) that Mr. Capuano held or appeared to hold unique or special expertise in professional sales management by virtue of his experience as Vice President or higher;(2) that a special relationship of trust or confidence existed between the parties; (3) that Mr. Capuano was aware of the use to which ICP would put the representations he made and Mr. Capuano supplied them for that purpose.  The jury was further told:

> If you do not find that ICP has proved all three parts of this element to establish the existence of a duty as a result of a special relationship, then ICP will have failed to prove this counterclaim and you will proceed no further on the negligent misrepresentation counterclaim.  If you find that ICP has proven that a duty, as a result of a special relationship, existed,

verdict "would have to have been based on the testimony of ICP witnesses that Capuano described his last position at EDS as a 'promotion,' which he denied ever doing," Pl. Mot. at 4, plaintiff's own argument acknowledges that there was ICP testimony that plaintiff did so describe his last position at EDS, which the jury could have credited, while disbelieving plaintiff's denial, in the context of the instruction that "a negligent misrepresentation claim cannot be based on representations that are promissory, conclusory, opinions of value or future expectations, or mere puffery," which instruction the jury is presumed to have followed.  See United States v. Stewart, 433 F.3d 273, 310 (2d Cir. 2006) ("We presume that juries follow their instructions.").  Lastly, the jury was instructed that plaintiff had no duty to volunteer information about his prior position unless such information was necessary to truthfully respond to defendant's questions.  While plaintiff contends that he was under no duty to volunteer information regarding his past position and that if certain information was critical to ICP, ICP should have done a background check, this argument contesting materiality and the existence of a special

---

> then you must go on to consider whether ICP has proven
> the other elements of a negligent misrepresentation
> claim.

Id. at 29.  The jury was also instructed that "[a] negligent misrepresentation claim cannot be based on representations that are promissory, conclusory, opinions of value or future expectations, or mere puffery." Id. at 29-30.

relationship of trust of confidence was made to, and apparently rejected by, the jury, which found that plaintiff violated his duty to give correct information by making false representations to ICP.

Thus, plaintiff has not met his burden of demonstrating that the jury's verdict was against the weight of the evidence or in contravention of the legal instructions.  Accordingly, plaintiff's motion on this ground is denied.

### C.    Comments by Defense Counsel

Plaintiff's last argument is that defense counsel's misconduct in remarks to the jury improperly prejudiced it. Whether to grant a new trial due to attorney misconduct is within the district court's discretion, given "the trial court's superior vantage point when evaluating the possible impact of the alleged prejudicial conduct."  Pappas v. Middle Earth Condominium Assoc., 963 F.2d 534, 540 (2d Cir. 1992).  "Obviously not all misconduct of counsel taints a verdict to such a degree as to warrant a new trial. . . . Yet, when the conduct of counsel in argument causes prejudice to the opposing party and unfairly influences a jury's verdict, a new trial should be granted."  Id.

This part of plaintiff's motion is focused on: (1) defense counsel's claim during opening statements that plaintiff had been fired from his previous employment; (2) defense counsel's questioning of plaintiff regarding being on a performance

10

improvement plan with his former employer; (3) defense counsel's argument in closing that plaintiff had testified that defendant had the discretion to determine if there was cause to determine his contract; (4) defense counsel's remark that defendant had incurred legal fees totaling twice the amount of plaintiff's claims; and (5) defense counsel's comment in closing "attempt[ing] to inflame the women on the jury by suggesting that question[s] regarding ICP's status as a woman-owned minority enterprise were sexist."  Pl. Mot. at 5-6.

   As to defense counsel's comments and questions regarding Mr. Capuano's termination and whether he had been on a performance improvement plan, the Court prior to trial, recognizing plaintiff's concern regarding impermissible Fed. R. Evid. 404(b) evidence, ordered that defense counsel would not introduce these matters unless necessary for impeachment of plaintiff's direct testimony and defense counsel was instructed that if she thought the door had been opened to such cross-examination, she was to raise the issue at a sidebar or recess prior to examining Mr. Capuano on the matter.  Defense counsel failed to request a sidebar before inquiring on these matters and, as a result, the Court instructed the jury: "You have heard testimony that Mr. Capuano was terminated from his prior employer, Electronic Data Systems, or EDS.  I instruct you not to draw any conclusion from this testimony that there was in fact any valid cause for

11

termination of Mr. Capuano's employment from EDS.  You may, however, consider this testimony on the issue of Mr. Capuano's credibility."  Jury Instructions at 17-18.  Defense counsel's claim that plaintiff "simply ignores the critical fact that the evidence of his EDS termination was clearly relevant and ultimately deemed admissible," is thus an overstatement, although the Court agrees that its limiting instruction, confining the jury's consideration of these matters to only that which was relevant, addressed plaintiff's concerns at the time and the Rule 404(b) arguments he raises now.

As to defense counsel's comment in closing argument that plaintiff testified that he understood ICP to have the discretion to determine cause to terminate his contract, plaintiff's own deposition testimony presented during trial included an admission to this effect.  Thus, it was permissible for defense counsel to reference this in closing, and the jury was free to credit that deposition testimony over plaintiff's trial testimony.

As to the comment regarding legal fees and the remark claimed to "inflame women on the jury," the Court first notes that the record does not reflect plaintiff raising an objection to the latter contemporaneously with closing arguments.  Moreover, the Court saw no indication that either comment constituted egregious conduct sufficient to create prejudice warranting a new trial, particularly where the comments did not

go to the merits of either party's claims.

### III. Conclusion

Thus, for the foregoing reasons, no new trial or amendment of the judgment is warranted and plaintiff's Motion [Doc. # 155] is DENIED.

          IT IS SO ORDERED.

          _____/s/_____
          Janet Bond Arterton
          United States District Judge

**Dated at New Haven, Connecticut this 13th day of September, 2006.**